IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTIONE DANIEL EPPS, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2439 |
| BECKY BARNHART, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM

Self-represented plaintiff Antione Daniel Epps, who is currently incarcerated at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, alleges that the defendants Rebecca Barnhart, RN, Brandy Shade, RN, and Henrietta Darpoh, RN, violated his constitutional rights by failing to provide adequate medical care when he had a stroke. ECF 1. Notwithstanding this Court's construction of the complaint as one filed pursuant to 42 U.S.C. § 1983, ECF 7, the defendants filed a motion to dismiss in which they argue that this Court does not have subject matter jurisdiction over Epps's state law claims of medical negligence. ECF 15. Epps counters that he alleges a violation of his Eighth Amendment rights. ECF 18–19. The defendants replied, and Epps filed a surreply. ECF 20, 21. No hearing on the motion is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the defendants' motion is granted in part and denied in part. Counsel is appointed for Epps, and he will have the opportunity, through counsel, to amend the complaint.[1]

---

[1] The Court previously dismissed claims against Warden William Bohrer and Secretary of Public Safety Robert L. Green. ECF 7. The Clerk shall amend the docket to reflect the defendants' correct names as stated in their motion to dismiss. ECF 15. Epps also names "male nurse" as a defendant, and he references other instances of alleged inadequate medical care without naming any defendant. ECF 1, at 8. As defendant "male nurse" has not been identified or served, counsel for defendants shall provide Epps's appointed counsel with copies of his medical records to

I.  **Background**

Epps alleges that on July 2, 2022, after coming back from the yard at about 2 p.m., he had a "very very bad headache, felt off balance, and [his] left arm went completely numb." ECF 1, at 2. He was sent to medical to be evaluated and saw Nurse Darpoh. *Id*. at 2–3. Epps alleges that Nurse Darpoh was "very disrespectful," did not take him seriously, and "kept saying 'nothing is wrong w[ith] you sir I can tell.'" *Id*. at 3. Epps told Nurse Darpoh that he had "lost all feeling in [his] left arm, the whole left arm, [he was] having very sharp pains shot in [his] head, and [it was] only getting wors[e] all on [the] left side." *Id*. Epps "even begged her saying please help me I'm not normal something is wrong." *Id*. He told her that his tongue "felt funny on the left side as if it was cramping up." *Id*. Nurse Darpoh "giggled" in response, stated that Epps "must be high off good shit," and told him, "sir I don't have time to play games w[ith] you." *Id*. Nurse Darpoh gave him an unknown pill and sent him back to his cell. *Id*.

On the morning of July 3, 2022, Epps "woke up in a pool of sweat w[ith] pain . . . in [his] whole left side of [his] neck to [his] head and face"; he had "blurred vision, couldn't walk, . . . and [his] face looked twisted"; the room and his body were "vibrating"; and the "room was spinning." *Id*. at 4. He was taken by a stretcher to medical, where he saw Nurse Shade. *Id*. Nurse Shade was irritated when he could not speak clearly or sit up quickly on the stretcher, and she and asked him what he "smoked." *Id*. Nurse Shade told Epps to smile, but he was in so much pain and felt "lost and confused," so he just sat there "with tears in [his] eyes." *Id*. at 5. Nurse Shade got "truly upset" and "kinda yelled in a high voice to an officer and said take [him] to a holding cell and lock [him] in there for four hours," and said she "bet [he would] come down of[f] that high then." *Id*.

---

identify "male nurse" as well as any other defendant who Epps alleges violated his rights. Epps, through appointed counsel, will have an opportunity to amend his complaint to name any unidentified defendants and to state any claims against them.

The officer asked whether Epps should be put in a wheelchair or stretcher, to which Nurse Shade responded: "[M]ake [him] walk or you can drag [him] back there for all I care." *Id.*

Epps was then forced to walk to a holding cell where he was left for two hours. *Id.* Epps states that "foam started comin[g] from [his] mouth as [he] tried to spit," and he forced himself to sleep. *Id.* When he woke, he asked another nurse for help. *Id.* She saw that his face was drooping worse and called 911. *Id.* He was taken first to the Hagerstown Hospital and then to Johns Hopkins Hospital, where he spent three or four days being treated for a stroke.[2] *Id.*

The defendants move to dismiss the complaint in its entirety for lack of subject matter jurisdiction over what they characterize as state law medical negligence claims. ECF 15. They also argue that Epps failed to comply with the mandatory prerequisites of the Maryland Health Care Malpractice Claims Act before filing suit. *Id.* Nurse Barnhart moves to dismiss the complaint because it raises no allegations against her. *Id.*

Epps responds that he alleges violations of his Eighth Amendment rights against cruel and unusual punishment. ECF 19.[3] The defendants contend that Epps cannot amend his complaint through his response to their motion, and that even if he could, he does not state a § 1983 claim. ECF 20. In a surreply, Epps insists that "nothing changed about [his] claim at all," and that "these lawyers [sare] just trying to win a word game." ECF 21.

---

[2] Epps makes several allegations about the medical staff's failure to treat him properly when he returned from the hospital, but other than alleging the "male nurse" gave him the wrong medication, he does not attribute any actions to any identified medical providers. ECF 1 at 7–9. As stated above, Epps, through counsel, will have an opportunity to amend his complaint to identify "male nurse" as well as any other defendants he alleges violated his rights when he returned from the hospital.

[3] Epps filed an opposition before he received a copy of the defendants' motion. ECF 18. After receiving the motion, he supplemented his response. ECF 19.

## II. Standard of Review

The defendants first move to dismiss the complaint because the Court "lacks subject matter jurisdiction over Plaintiff's state law claims." ECF 15. "A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it. *Id.* Where, as here, defendants contest subject matter jurisdiction "by contending that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper"—a facial challenge to jurisdiction—the plaintiff "is afforded the same procedural protections as he would receive under a Rule 12(b)(6) consideration[.]" *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (internal quotation marks omitted). Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

The defendants additionally argue that Epps has failed to state a claim. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more

than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe *pro se* pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only

"determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)).  Thus, a *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

### III. Discussion

The Court construed Epps's complaint, in which he alleges "cruel [and] unusual punishment," ECF 1, at 8, as a § 1983 civil rights complaint. *See* ECF 11.  The Court has subject matter jurisdiction over this federal question.  28 U.S.C. § 1331.  The defendants' motion to dismiss is denied insofar as it is based on lack of subject matter jurisdiction.

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right.  *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999).  The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Under the Eight Amendment, the government must "provide

medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103.  To state a claim based on the alleged denial of medical care, a plaintiff must allege that the defendants' actions or their failure to act amounted to "deliberate indifference to serious medical needs." *See id.* at 106; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).  A prison medical provider is deliberately indifferent to a serious medical need if, objectively, the prisoner was suffering from a serious medical need and, subjectively, the provider, aware of the prisoner's need for medical attention, failed to either provide such care or to ensure care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Epps has stated a § 1983 claim against Nurses Darpoh and Shade for violating his Eighth Amendment rights.  Epps alleges a serious medical need:  He was experiencing symptoms consistent with a stroke, including numbness on one side, a severe headache, confusion, and slurred speech.  Epps further alleges that Nurses Darpoh and Shade were aware of that need:  He presented to them for care with these symptoms.  And Epps alleges that once they were aware of his symptoms, they failed to provide him medical care or ensure he obtained care.  They disregarded his complaints of pain and numbness, failed to examine him, suggested that he had taken an illicit substance, expressed amusement (Darpoh) or annoyance (Shade), and sent him

away.  ECF 1, at 3, 4–5.  These alleged actions and statements, taken as true, sufficiently allege that Nurses Darpoh and Shade knew Epps had a serious medical need and were deliberately indifferent to that need.  As such, the motion to dismiss is denied as to Nurses Darpoh and Shade.

As for Nurse Barnhart, whom Epps identifies as "Head of Medical," Epps fails to state a claim against her.  A defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at 782.  Officials may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights."  *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).  To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury.  *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Epps refers to Nurse Barnhart in the caption of the complaint, but he does not make any specific allegations against her. Therefore, the motion to dismiss is granted as to Nurse Barnhart.

### IV.   Conclusion

Epps has alleged constitutional violations over which the Court has subject matter jurisdiction.  His claims may proceed against Nurses Darpoh and Shade.  He has not stated a claim

against Nurse Barnhart.  As Epps is indigent and incarcerated and the case requires the filing of an amended complaint and potential discovery, counsel will be appointed pursuant to 28 U.S.C. § 1915(e)(1).  As to defendant "male nurse," counsel for the defendants is directed to provide appointed counsel with a copy of Epps's medical records relevant to his allegations, and Epps is granted leave to amend his complaint, through counsel, to identify and state a claim as to the defendant who he recalls was a "male nurse" and any other defendants who he claims violated his rights by failing to provide adequate medical care following his return from the hospital.

By separate Order that follows, the defendants' motion to dismiss is DENIED as to Nurses Darpoh and Shade and GRANTED as to Nurse Barnhart, and counsel is appointed for Epps.

February 26, 2024
Date

Deborah L. Boardman
United States District Judge